**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
                                        )
HALL & ASSOCIATES,                      )
          Plaintiff,                    )
                                        )
     v.                                 )          Civil Case No. 10-1940 (RCL)
                                        )
ENVIRONMENTAL PROTECTION                )
AGENCY,                                 )
          Defendant.                    )
                                        )
_____ )


<u>**MEMORANDUM OPINION**</u>

Plaintiff Hall & Associates ("Hall") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, appealing the defendant Environmental Protection Agency's ("EPA"): (1) assessment of charges following Hall's FOIA appeal determination; (2) withholding of documents responsive to Hall's FOIA request; and (3) alleged failure to provide Hall with a full and complete FOIA response.  Before the Court is EPA's Motion [10] for summary judgment and Hall's Cross-Motion [11] for summary judgment and Motion for in camera review.  Upon consideration of EPA's Motion [10] for summary judgment; Hall's Cross-Motion [11] for summary judgment, Motion for _in camera_ review, and opposition to EPA's motion; EPA's reply [14] in support of its motion and opposition to Hall's cross-motion for summary judgment and motion for _in camera_ review; Hall's reply [17] in support of its motion for _in camera_ review; Hall's reply [18] in support of its cross-motion for summary judgment; the applicable law; and the entire record in this case; the Court will GRANT IN PART and DENY IN PART EPA's Motion for summary judgment, GRANT IN PART and DENY IN

PART Hall's Cross-Motion for summary judgment, and DENY Hall's Motion for *in camera* review.  The Court will explain its reasoning in the analysis that follows.

## I.     PROCEDURAL HISTORY

In a letter dated February 19, 2010, Hall submitted a FOIA request to EPA seeking documents delineating EPA's current and historical position on whether states with approved National Pollutant Discharge Elimination System ("NPDES") programs under section 402(b) of the Clean Water Act ("CWA"), 33 U.S.C. § 1342(b), may authorize bacteria mixing zones in freshwater lakes and rivers.[1]  Hall's request sought "all records developed by EPA indicating that a state cannot and/or should not approve mixing zones for point sources when applying the bacteria body contact recreation standard."  Compl. Ex. 1 ("FOIA Request").  EPA's National FOIA Office assigned a processing number (HQ-FOI-00748-10) and categorized the request as "commercial" pursuant to EPA regulations because the request letter was made by a commercial entity and did not seek a fee waiver.  Def.'s Mot. for Summ. J. [10] Ex. 1 ("Washington Decl."), ¶ 17–18; *see also* 5 U.S.C. § 552(a)(4)(A)(ii)(I); 40 C.F.R. § 2.107(c).  EPA's National FOIA Office assigned response duties to the Office of Science and Technology.  Washington Decl. ¶ 18.  On March 4, 2010, the Office of Science and Technology identified all offices within EPA that could reasonably be expected to have responsive documents and conducted a search related to mixing zones and bacteria.  *Id.* ¶¶ 19–21.  In a series of phone and e-mail discussions with Hall, EPA sought and obtained from Hall a brief extension to respond to the FOIA request.  *Id.* ¶ 19.  EPA then created a collections database to house the records.

---

[1] A mixing zone is a theoretical area in a body of water where effluent from a water treatment facility is discharged into a receiving body of water, such as a river or stream, and initial mixing, or dilution, of the effluent occurs.  Def.'s Mot. for Summ. J. [10] Ex. 1 ("Washington Decl."), ¶ 9.  A mixing zone is a mathematical construct that involves the calculation of dilution based on water volumes and the application of technical formulae to determine whether and to what extent a limitation on the effluent should be included in a given permit consistent with applicable water quality standards that have been adopted by states and approved by EPA.  Washington Decl. ¶ 9.

EPA identified responsive documents for release, subject to an assurance of payment from Hall for search, duplication, and review costs. *Id.* ¶ 20.  Hall provided written assurance of payment for the amount of $372.30 on March 23, 2010. *Id.*  On April 5, 2010, EPA released approximately thirty documents to Hall and withheld approximately 300 others under FOIA Exemption 5, the deliberative process privilege. *Id.* ¶ 21.  The withheld documents consisted largely of e-mail communications and drafts circulated among EPA staff in both headquarters and regional offices. *Id.*  At that time, EPA provided Hall with the metadata (subject, date, author, and recipients) for each document being withheld. *Id.*  On April 28, 2010, Hall appealed EPA's decision to withhold documents under Exemption 5. Compl. Ex. 4.  Hall also cited EPA's failure to provide a categorical summary of its response to Hall's FOIA request—that is, EPA's failure to indicate which documents were responsive to which portions of the request—as a failure to fully respond in a manner that allowed Hall to evaluate the adequacy of EPA's response to each subrequest. *Id.*

In a letter dated May 25, 2010, the Office of General Counsel, who reviewed Hall's administrative appeal, granted the appeal in part and remanded to the Office of Science and Technology for a review of whether any releasable information might be reasonably segregable from information exempted from disclosure under FOIA. Compl. Ex. 5.  The letter stated that the letter itself "constitute[d] EPA's final determination on this appeal," and did not include a statement regarding the need for further payment from Hall for EPA to properly respond to the FOIA request. *Id.*

Upon receipt of the Office of General Counsel's appeal determination, EPA assessed the cost of reviewing and redacting segregable material as ordered by the hearing officer.  Washington Decl. ¶ 24. On June 17 and June 25, 2010, EPA requested further written assurance of payment of $3,280 from Hall, the amount that EPA claimed it would cost to proceed with the necessary review of withheld documents for reasonably segregable material.  Compl. Exs. 6, 7.  Additionally, EPA agreed to provide Hall with a categorical summary of its response and calculated the cost of doing so to be an additional $615.  Compl. Ex. 7.

Between June and August 2010, Hall communicated with EPA regarding the Agency's price assurance request.  Based on these communications, EPA agreed to lower the price of providing the results of the administrative appeal mandated segregability review to $1,025.  Def.'s Mot. for Summ. J. [10] Ex. 14.  EPA also reduced its demanded payment to provide Hall with a categorical summary of responsive documents to $205, which Hall agreed to pay.  Compl. Ex. 7.  On August 20, 2010, EPA provided Hall with the requested categorical summary of previously released and withheld documents, even though this categorization is not routinely provided in processing FOIA requests.  Washington Decl. ¶ 28.

Following receipt of EPA's categorical summary, Hall reiterated to EPA its requests that EPA: (1) conduct the review of the withheld documents to identify whether there was segregable information, as instructed by the appeal determination; (2) retract EPA's payment request; (3) provide Hall all withheld documents; and (4) reevaluate whether EPA had properly categorized the produced documents under the appropriate subcategories.  Compl. Exs. 9, 10.  EPA twice extended the deadline for Hall to provide payment assurance for review of the remaining documents, yet Hall continued to refuse to provide a payment assurance for EPA's second review of the requested documents.  In a letter dated September 8, 2010, EPA informed Hall that it was closing the FOIA request due to lack of written assurance of payment.  Def.'s Mot. for Summ. J. Ex. 17.  On September 10, 2010, Hall responded by indicting that it might file a complaint in this Court challenging EPA's compliance with its FOIA responsibilities.  Washington Decl. ¶ 30.  Through a series of letters and phone conferences between the parties, EPA indicated that it would continue to review and release records once it received payment assurance, while Hall continued to demand records without paying the requested fees.  *Id.* ¶¶ 32–35.  On October 21, 2010, EPA released an additional thirty documents that it has previously withheld, but reiterated that it would not produce the results of its segregability review unless and until Hall provided a payment assurance.

On November 16, 2010, Hall filed the complaint in the present case.  Contemporaneous with its answer to the complaint, EPA notified Hall that EPA would release the results of its segregability review

if it received a price assurance of $840, a reduction from the initial demand of $3,280.  Def.'s Mot. for

Summ. J. [10] Ex. 23.


## II.      STATUTORY FRAMEWORK

FOIA requires agencies of the federal government, upon request, to release records to the

public.  5 U.S.C. § 552(a).  The term "record," as defined in FOIA, includes "any information

that would be an agency record subject to the requirements of [FOIA] when maintained by an

agency in any format, including an electronic format," including any such information "that is

maintained for an agency by an entity under Government contract, for the purposes of records

management."  5 U.S.C. § 552(f)(2).  A FOIA requester may appeal an agency's failure to

disclose requested records.  5 U.S.C. § 552(a)(6).  If the agency denies the request on appeal, the

requester is deemed to have fully exhausted his administrative remedies and may bring suit in

federal district court.  5 U.S.C. § 552(a)(6)(C)(i).  A district court has jurisdiction to enjoin a

federal agency from withholding information and order the production of any records that have

been improperly denied to the requester.  5 U.S.C. § 552(a)(4)(B).

## III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the

moving party demonstrates that "there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining

whether a genuine issue of material fact exists, the trier of fact must view all facts, and all

reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  In order to defeat

summary judgment, a factual dispute must be capable of affecting the substantive outcome of the

case and be supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Laningham v. U.S. Navy, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[, and t]he moving party is entitled to judgment as a matter of law." Celotext Corp. v. Catrett, 477 U.S. 317, 322 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Citizens for Responsibility & Ethics in Washington v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007); *Wheeler v. DOJ*, 403 F. Supp. 2d 1, 5–8 (D.D.C. 2005).  An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and nonconclusory declarations.  *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974); *Wheeler*, 403 F. Supp. 2d at 6.

The Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

IV.     ANALYSIS

A. Hall's Refusal to Pay EPA For Review and Segregation of Responsive
   Records

EPA moves for summary judgment on the ground that Hall has failed to exhaust its

administrative remedies with regard to Hall's refusal to pay the requested review and duplication

fees.  Hall also moves for summary judgment on this issue, maintaining that Hall is not required

to pay EPA for costs associated with EPA's review of withheld documents stemming from the

appeal determination, and that EPA never even provided Hall with an appealable determination

regarding this fee issue.

1.  "Initial Review"

EPA argues that it was within its rights to assess Hall a fee and to require a price

assurance for EPA's review of withheld documents that took place as a result of the partial

granting of Hall's appeal determination.  However, the express language of FOIA and EPA

regulations allow for review fees to be charged only during the initial review.  Under FOIA,

review costs assessed by agencies "shall include only the direct costs incurred during the initial

examination of a document for the purposes of determining whether the documents must be

disclosed under [FOIA] and for the purposes of withholding any portions exempt from disclosure

under [FOIA]."  5 U.S.C. § 552(a)(4)(A)(iv).  FOIA guidance documents support a plain reading

of the FOIA provision governing fees, stating that "[i]t should be noted that charges may be

assessed only for the initial review; i.e., the review undertaken the first time an agency analyzes

the applicability of a specific exemption to a particular record or portion of a record." Uniform

Freedom of Information Act Fee Schedule & Guidelines, 52 Fed. Reg. 10012, 10018 (Mar. 27,

1987). Moreover, EPA regulations provide that for commercial use requests,

> [r]eview fees will be charged only for the initial record review (that is, the review done when an office is deciding whether an exemption applies to a particular record or portion of a record at the initial request level). No charge will be made for review at the administrative appeal level for an exemption already applied. However, records or portions of records withheld under an exemption that is subsequently determined not to apply may be reviewed again to determine whether any other exemption not previously considered applies . . . .

40 C.F.R. § 2.107(c)(2)(iii).

Because there is no law on point in this Circuit, the parties turn to authority from other

courts in support of their arguments. The plaintiff cites a case from the Eastern District of

Michigan as the basis for its argument that EPA cannot charge review fees for work that EPA

should have performed during its initial review of the withheld documents. In *AutoAlliance

International, Inc. v. U.S. Customs Service*, the plaintiff requester made a FOIA request to the

defendant agency, but the agency did not assess any fees for its initial review of responsive

documents. *AutoAlliance Int'l, Inc. v. U.S. Customs Service*, Docket No. 02-72369, slip op.

(E.D. Mich. July 31, 2003). The requester was dissatisfied with the agency's original response to

its FOIA request and filed an administrative appeal. *Id.*, slip op. at 4. Following the appeal, the

agency informed the requester that it would need additional financial compensation to complete

the subsequent review of the documents. *Id.* In determining that the agency was precluded from

assessing costs for the second review, the court reiterated that as "FOIA makes clear, an agency

can only charge a requester the costs incurred from the 'initial' examination." *Id.*, slip op. at 7.

The court made clear that "[t]he fact that a thorough examination that resulted in costs did not

occur until the appellate level should not result in the assessment of fees to [the requester]." *Id.*

The facts of *AutoAlliance* are slightly different from those in the present case—here, EPA assessed fees both for the initial review and after appeal, whereas the agency in *AutoAlliance* only assessed fees for review after appeal—but those factual differences are immaterial to the holding of *AutoAlliance* and its applicability to the present case.  In fact, the Eastern District of Michigan's finding that fees for review after appeal cannot be assessed even when the agency did not assess fees for the review that occurred before appeal actually strengthens the case's persuasiveness here.   The Court therefore finds *AutoAlliance* to be persuasive authority unequivocally supporting Hall's argument that no fees can be assessed for the review that stemmed from Hall's appeal.

EPA tries to justify its request for a payment assurance from Hall after appeal by claiming that the review and redaction that it was ordered to conduct by the appeal decision actually falls within the definition of "initial review" as contemplated by FOIA and EPA regulations.  According to EPA, had EPA conducted the review and redaction at the outset, Hall would have been charged that amount at the outset.  Instead, EPA argues, Hall was only charged for the costs associated with the review that was performed originally, and so Hall is simply being charged for the remainder of EPA's initial review of the documents responsive to Hall's FOIA request.  The Court notes that a case from the District of Minnesota could be construed to support EPA's argument.  In *Gavin v. SEC*, 2006 WL 2975310 (D. Minn. 2006), the agency relied on a FOIA exemption in responding to the requester's FOIA request without conducting a document-by-document review.  *Gavin v. SEC*, 2006 WL 2975310, at *5.  The court in that case found that even though the agency should have completed a document-by-document review from the outset, the court-ordered review would be "the initial examination to determine whether the documents must be disclosed or withheld," and thus held the examination to be within the FOIA

definition of "initial review" and required the requester to pay for these review costs.  *Id.*  In the present case, however, EPA's initial review included a document-by-document review; what it did not include was a segregability analysis that was subsequently ordered on appeal.

Furthermore, this Court is not bound by the Minnesota court's holding and, to the extent that *Gavin* could be construed to support EPA's argument, this Court declines to follow it on policy grounds.  The Court sees EPA's argument as a meritless attempt to skirt the plain meaning of "initial review" as contemplated by the FOIA statute and EPA regulation governing these fees.  The administrative appeal determination—conspicuously silent on this fee issue—found that EPA's initial response to Hall's FOIA request was deficient and mandated that the Agency conduct a segregability analysis that it should have performed initially.  EPA takes that finding to mean that because EPA improperly withheld documents in its first response, it is now allowed to charge Hall additional fees for the time needed to cure its deficient response.  But when the Agency's FOIA response is deemed inadequate on appeal, the Agency cannot make its production of the originally improperly withheld documents contingent upon further payment from the requester under the theory that the work done in an effort to cure its initial inadequate response is still part of the "initial review."  Permitting the Agency to charge additional fees to conduct the legally sufficient review that it should have provided the requester at the outset would create perverse incentives and encourage the Agency to undertake insufficient review processes as a matter of practice in order to increase revenues.

### 2.  Exhaustion of Administrative Remedies

In support of its decision to withhold responsive documents and a segregability analysis in the absence of payment from Hall, EPA avers that Hall has failed to exhaust its administrative remedies with regard to the fee issue, and so Hall is thereby precluded from receiving the

requested relief.   However, Hall properly appealed the only adverse determination made by EPA—EPA's April 5, 2010 response to Hall's FOIA request.   In a letter dated April 28, 2010, Hall made a written appeal of this response.   *See* Compl. Ex. 4.   EPA argues that Hall should have also appealed EPA's second request for a price assurance from Hall as an additional adverse determination, yet EPA never informed Hall that it had made an adverse determination on this fee issue.   Under its own regulations, EPA has an affirmative duty to inform a FOIA requester in writing of all adverse determinations that EPA makes under the request.   40 C.F.R. § 2.104(g).   The letter memorializing the adverse determination must include "[a] statement that the denial may be appealed under, and a description of the requirements of, paragraph (j) of this section."   40 C.F.R. § 2.104(h)(4).   EPA clearly adhered to this duty in its April 5, 2010 response to Hall's FOIA request, including a statement that EPA's response may be appealed and a description of how to properly do so according to the requirements of 40 C.F.R. § 2.104(j).   *See* Compl. Ex. 3.   However, the record demonstrates that this was the only instance where EPA provided Hall with notice of its adverse determination as required by 40 C.F.R. §§ 2.104(g) and (h).   All other EPA correspondence with Hall surrounding Hall's FOIA request, including those communications between the parties pertaining to fees, were void of this appeal language.   *See* Def.'s Mot. for Summ. J. Exs. 11, 14, 20.   As EPA never rendered an appealable determination on this fee issue, EPA's argument that Hall has not exhausted its administrative remedies is baseless.

The Court finds that because EPA already charged Hall for initial review of the records responsive to Hall's FOIA request, EPA improperly required further price assurance from Hall before complying with the administrative appeal determination.   The Court therefore denies EPA's motion for summary judgment and grants Hall's cross-motion for summary judgment on

this issue, enjoining EPA from charging Hall for work that should have properly been completed during the initial FOIA review, enjoining EPA from withholding all records or portions thereof that were directed to be released by EPA's appeal determination, and ordering their immediate disclosure to Hall.[2]

### B.  Adequacy of EPA's Response to Hall's FOIA Request

Hall's February 19, 2010 FOIA request sought eight categories of documents.  Hall claims that upon receiving EPA's response, it was unable to identify which documents were responsive to which category, and therefore requested that EPA prepare a categorical summary as a means to assist Hall in analyzing the sufficiency of EPA's response.  Although the Agency determined on appeal that EPA was not required under FOIA to prepare this requested categorical summary, EPA later agreed to provide Hall with a categorical summary of both the produced and withheld responsive documents for a $205 fee.[3]  Hall paid the fee and EPA produced this categorical summary to Hall, which consisted of a handwritten number on the first page of each responsive record corresponding to the eight individual subrequests in the order that they were listed in Hall's original FOIA request.  *See* Compl. Ex. 8.  Hall claims that the results of the categorical summary indicate that EPA did not respond to Hall's FOIA request fully and completely in violation of FOIA, 5 U.S.C. § 552(a)(3).  To support its allegation, Hall points to the existence of particular documents that it believes are responsive to subrequests 2 and 3, but that EPA did not identify as such.  Both parties move for summary judgment on this issue.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg*

---

[2] EPA has agreed to release the following documents to Hall in full: 18, 66, 73, 140, and 142.  *See Vaughn* Index, ECF No. 10 Ex. 2; Amended *Vaughn* Index, ECF No. 16 Ex. 1.  These documents are encompassed in the Court's ruling.

[3] EPA regulations provide that "when an office chooses as a matter of administrative discretion to provide a special service . . . the direct costs of providing the service ordinarily will be charged."  40 C.F.R. § 2.107(f).

*v. U.S. Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely located.  *Oglesby*, 920 F.2d at 68.  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  The agency carries the burden of demonstrating that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  To meet this burden, the agency may submit nonconclusory affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Failure to locate specific documents does not render the agency's search inadequate or demonstrate that the search was conducted in bad faith.  *See Twist v. Gonzales*, 171 F. Appx. 855, 855 (D.C. Cir. 2005).  The inquiry is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard*, 926 F.2d at 1201.  Courts measure reasonableness by examining the method of the search, not by determining whether additional responsive documents might potentially exist.  *Cleary, Gottleib, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F.Supp. 770, 777 n.4 (D.D.C. 1993) (citing *Meeropol v. Meese*, 790 F. 2d 942, 952–53 (D.C. Cir. 1986)).  "Mere

speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *SafeCard*, 926 F.2d at 1201.

Although Hall's complaint broadly states that EPA failed to provide Hall with a "full and complete FOIA response," it does not allege with any specificity that EPA failed to conduct an adequate search. *See* Compl. ¶¶ 1, 23–27. Even if the complaint had specifically alleged facts related to the adequacy of EPA's search, EPA has demonstrated that it conducted an adequate search reasonably calculated to discover the requested documents. Upon receiving Hall's FOIA request, EPA's National FOIA Office gave the request a processing number and assigned response duties to the Office of Science and Technology. Washington Decl. ¶¶ 18–21. That office thereafter identified all offices within EPA that might have responsive information and conducted a search relating to mixing zones and bacteria. *Id.* This search turned up hundreds of responsive documents from the database that housed records of several subcomponent offices of the Agency, including many from EPA's regional offices as well as from EPA Headquarters offices. *Id.* ¶ 21. These search methods employed by EPA could be reasonably expected to produce the information requested by Hall.

But as Hall repeatedly states, it does not dispute the adequacy of EPA' search. Rather, Hall says, it is challenging the completeness of EPA's response. According to Hall, the categorical summary provided by EPA was the means by which Hall discovered the inadequacy of EPA's response to two of its subrequests. Without offering any evidence in support of its claims, Hall goes so far as to allege that EPA's FOIA response was not made in good faith and asks the Court to compel a "full and complete response" from the Agency.

Hall is simply parsing words in its attempt to separate a challenge to EPA's search for records responsive to Hall's FOIA request from a challenge to EPA's response to Hall's FOIA

request.  Hall cannot dispute the adequacy of EPA's response without simultaneously disputing the adequacy EPA's search, because the Agency's response is necessarily the result of its search—they are two sides to the same coin.  If Hall does not challenge the adequacy of EPA's search, as it maintains, then it is unclear what Hall does argue—that EPA improperly categorized responsive documents in the summary, or that EPA located responsive documents in the course of its search but failed to turn those documents over to Hall.  Neither argument is developed in Hall's pleadings.  Either way, Hall asks the Court to compel EPA to produce a corrected categorical summary, relief not contemplated under FOIA.  "It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 321 (D.C. Cir. 1982) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975)).  The Court will therefore grant EPA's motion for summary judgment and deny Hall's cross-motion for summary judgment on this issue.

## C.  EPA's Invocation of FOIA Exemption 5

Although EPA maintains that it is not required to conduct a review and segregation of responsive documents in the absence of an additional payment assurance from Hall, EPA has reviewed, redacted, and segregated the responsive records.  While EPA still refuses to provide Hall with the documents responsive to Hall's FOIA request, EPA has provided both the Court and the plaintiff with a *Vaughn* index describing the documents it continues to withhold pursuant to Exemption 5 of FOIA and the justifications therefore.   Based on this *Vaughn* index, EPA and Hall both argue that they are entitled to summary judgment on the issue of whether EPA properly withholds documents under this exemption.

Exemption 5 to FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have interpreted this exemption "to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including among them "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process privilege.'" *Taxation With Representation Fund* ("*TWRF*") *v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981) (citations omitted).

EPA relies primarily on the deliberative process privilege as the basis for withholding documents. Three main policy purposes underlie this privilege: (1) to ensure that government staff provide superiors with "uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism"; (2) to avoid "premature disclosure of proposed policies before they have been finally formulated or adopted"; and (3) "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (citing *Jordan v. DOJ*, 591 F.2d 753, 772–74 (D.C. Cir. 1978)). For the deliberative process privilege to apply, two requirements must be met. First, the communication must be predecisional, that is, "antecedent to the adoption of an agency policy." *Jordan*, 591 F.2d at 774. Second, the communication must be deliberative, meaning "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975). The agency has the burden of showing—through a declaration and a *Vaughn* index—that the information in question satisfies

both requirements. *See Coastal States*, 617 F.2d at 866. The deliberative process privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting an agency position that which is as yet only a personal position." *Id.*

To determine whether a document is predecisional, an agency does not necessarily have to point specifically to an agency final decision, but must merely establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id.* at 868. In claiming that a withheld document is predecisional, it is particularly important for an agency to identify the larger process to which the document contributes. *See Access Reports v. DOJ*, 926 F.2d 1192, 1196 (D.C. Cir. 1991). Moreover, even if a document was generated prior to a final decision, "the privilege applies only to the 'opinion' or 'recommendatory' portion of [a document], not to factual information which is contained in the document." *Coastal States*, 617 F.2d at 867. EPA indicated in its *Vaughn* index that it withheld numerous documents which set forth EPA and states' existing or historical practices with regard to permitting bacteria mixing zones in bodies of water designated for body contact recreation, and it did not identify how the withheld portions of a number of documents contributed to the agency's deliberative process. Accordingly, upon review of EPA's *Vaughn* index and accompanying declaration, the Court finds that EPA must produce the following documents to Hall because they are not exempt under the deliberative process privilege: 12, 16, 17, 19–24, 26, 28–33, 35–37, 39–46, 57, 60, 64, 67, 69, 71, 72, 93–96, 98, 102, 104–106, 108–111, 117–120, 123, 124, 126–128, 130, 134–139, 141–145, 147, 149–153, 155, 161, 163, and 164.

In contrast to predecisional documents, postdecisional documents are not covered by the deliberative process privilege.  Examples of postdecisional documents can be seen when the records at issue reveal "statements of policy and interpretations which have been adopted by the agency" or "instructions to staff that affect a member of the public."  *Sears*, 421 U.S. at 153–54.  Moreover, an agency's policy or interpretation need not be published or announced to the public in order for the deliberative process privilege to be deemed inapplicable.  Such agency "secret law," which is "routinely used by agency staff as guidance," is not protectable because it is not in fact predecisional, but rather "discuss[es] established policies and decisions."  *Coastal States*, 617 F.2d at 868, 869.  Hall challenges EPA's reliance on the deliberative process privilege for documents that post-date the issuance of the King Memorandum, a memorandum dated November 12, 2008 in which EPA Headquarters provided specific guidance to EPA Region 7 Water Division on the appropriateness of mixing zones in primary human body contact waters designated for recreational use.  *See* Washington Decl. ¶¶ 13–16.  Hall argues that documents that were created after the King Memorandum was released cannot be predecisional.  In response, EPA argues that the documents it withholds dated after November 12, 2008 are postdecisional in form in timing, but predecisional in content.  *See Elec. Privacy Info. Ctr. v. DHS*, 2006 WL 6870435, at *7 (D.D.C. Dec. 22, 2006) (protecting e-mail message generated after agency decision made that "recant[ed]" deliberations preceding decision).  However, the Court's review of EPA's *Vaughn* index and accompanying declaration of Evelyn Washington reveals that EPA's argument that these postdecisional documents are exempt as predecisional in content is largely misguided.  The Court thus finds that EPA must produce the withheld portions of the following documents to Hall because they are postdecisional in form and timing as well as in content: 133, 146, 148, 156–160, 165, 170, and 173.

EPA also relies on the attorney-client privilege under Exemption 5 as the basis for withholding a number of documents.[4]   To invoke the attorney-client privilege, an agency must demonstrate that the document it seeks to withhold (1) involves "confidential communications between an attorney and his client," and (2) relates to "a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).   The attorney-client privilege does not allow an agency to withhold a document merely because it contains communication between the agency and its lawyers. *Coastal States*, 617 F.2d at 862–63.   The agency bears the burden of showing that the information exchanged between the agency and its lawyers was confidential—that is, the agency must show that it supplied information to its lawyers "with the expectation of secrecy and was not known by or disclosed to any third party." *Mead*, 566 F.2d at 253–54.   Upon review of EPA's *Vaughn* index and accompanying declaration, the Court finds that the attorney-client privilege properly applies to the portions of the following documents over which it was asserted: 13, 25, 61, 63, 65, 81, 82, 91, 107, 113–116, 125, 131, 154, 162, 168, 172, 174.   However, the Court finds that document 160 was not properly withheld under either the attorney-client privilege or the deliberative process privilege and must be produced to Hall.

Consequently, after examination of EPA's *Vaughn* index and accompanying declaration of Evelyn Washington, the Court finds that EPA has met its burden of proving that portions of following documents—as indicated on the *Vaughn* index—have been properly withheld under Exemption 5: 1–11, 13–15, 25, 34, 38, 47–56, 58, 59, 61–63, 65, 68, 70, 74–92, 97, 99–101, 103, 107, 112–116, 121, 122, 125, 129, 131, 132, 154, 162, 166–169, 171, 172, 174, and 175.   The Court therefore grants EPA's motion for summary judgment insofar as it finds that EPA properly

---

[4] Each time the attorney-client privilege was invoked by EPA in its *Vaughn* index, the privilege was invoked along with the deliberative process privilege.

withheld these documents.  However, the Court denies EPA's motion and grants Hall's cross-motion as to the remaining 93 documents that were not properly withheld under Exemption 5, and orders these documents produced.

### D. *In Camera* Review

FOIA gives district courts the discretion to examine the contents of requested agency records *in camera* "to determine whether such records or any part thereof shall be withheld." *See* 5 U.S.C. § 552(a)(4)(B).  "The decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'"  *Lam Lek Chong v. DEA*, 929 F.2d 729, 735 (D.C. Cir. 1991) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)). Agency affidavits are sufficient to justify summary judgment without *in camera* inspection when they meet the following standard:

> [T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption.  The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.  If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."

*Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, (1980).  "[W]hen the agency meets its burden [under FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate."  *Weissman v. CIA*, 565 F.2d 692, 696–97 (D.C. Cir. 1977).  However, "*in camera* inspection may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency," when the number of withheld documents is relatively small, or "when the dispute turns on the contents of the withheld documents, and not

the parties' interpretations of those documents." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

Hall argues that *in camera* review is appropriate here because the dispute turns on the contents of the withheld documents, not on the parties' interpretations of those documents. In FOIA proceedings such as this one, where the defendant possesses exclusive access to the disputed records and the plaintiff cannot know the precise content of the documents it seeks, rigorous *de novo* review by the Court constitutes the only opportunity for independent scrutiny of the subject records. *See EPA v. Mink*, 419 U.S. 73 (1973); *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987). Hall argues that because it is without knowledge of the contents of the withheld documents, "*in camera* review would ensure some measure of an adversarial process to guarantee that justice will be served in this case." However, the Court finds that EPA's *Vaughn* index and accompanying declaration are sufficiently detailed to permit meaningful review of the Agency's exemption claims without *in camera* review.

In further support of its motion for *in camera* review, Hall alleges that there is evidence of bad faith on the part of the Agency in responding to Hall's FOIA request, and that there is evidence of illegality with regard to the underlying Agency activities that generated the documents at issue. However, Hall has not provided the Court with any evidence that EPA responded to Hall's FOIA request in bad faith. Instead, Hall simply makes blanket statements that EPA "did not, in good faith, fully and completely respond" to the plaintiff's FOIA request. Pl.'s Cross-Mot. for Summ. J. and Opp. to Def.'s Mot. for Summ. J. [11], at 43. Nor has Hall presented the Court with any evidence of underlying illegal Agency activity with regard to the documents at issue. Hall merely states that it "suspects . . . potential illegality" on the part of

EPA. *Id.* These mere allegations, without more, are not enough to persuade the Court to conduct *in camera* review.

While FOIA provides the Court the option to conduct *in camera* review, 5 U.S.C. § 552(a)(4)(B), it by no means compels the exercise of that option. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). It is within the Court's "broad discretion" to decline to conduct *in camera* review where, as here, the Court believes that *in camera* inspection is unnecessary "to make a responsible de novo determination on the claims of exemption." *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987). The Court therefore denies Hall's motion for *in camera* review.

## V.      CONCLUSION

For the foregoing reasons, the Court finds that EPA improperly required further price assurance from Hall before complying with the administrative appeal determination. The Court therefore denies EPA's motion for summary judgment and grants Hall's cross-motion for summary judgment on this issue, enjoining EPA from charging Hall for work that should have properly been completed during the initial FOIA review, enjoining EPA from withholding all records or portions thereof that were directed to be released by EPA's appeal determination, and ordering their immediate disclosure to Hall.

The Court also grants EPA's motion for summary judgment and denies Hall's cross-motion for summary judgment on the issue of the adequacy of EPA's search for the requested documents, declining Hall's request to compel EPA to produce a corrected categorical summary.

The Court further grants in part and denies in part EPA's motion for summary judgment and grants in part and denies in part Hall's cross-motion for summary judgment on the applicability of FOIA Exemption 5 to the withheld documents. Specifically, the Court enters

summary judgment for EPA on its withholding of the following 81 documents pursuant to FOIA Exemption 5: 1–11, 13–15, 25, 34, 38, 47–56, 58, 59, 61–63, 65, 68, 70, 74–92, 97, 99–101, 103, 107, 112–116, 121, 122, 125, 129, 131, 132, 154, 162, 166–169, 171, 172, 174, and 175. However, the Court orders EPA to produce the following 94 documents to Hall, without assurance of further payment: 12, 16–24, 26–33, 35–37, 39–46, 57, 60, 64, 66, 67, 69, 71–73, 93–96, 98, 102, 104–106, 108–111, 117–120, 123, 124, 126–128, 130, 133–153, 155–161, 163–165, 170, and 173.

Finally, the Court denies Hall's motion for *in camera* review.

A separate Order consistent with this Memorandum Opinion will issue this date.

Signed by Royce C. Lamberth, United States District Judge, on March 7, 2012.